Good morning, your honors. Counsel, may it please the court. I am Sonia Miller-Van Oort. I'm here on behalf of Appellant Juan Berenguer and his appeal arising from breaches of his personal information by law enforcement officers in violation of the DPPA. Now this court has issued seven different DPPA related opinions in the last two years and based on those rulings in those cases the Hagelin and Schambord case, two of those opinions, this court has already conclusively held that a DPPA plaintiff, who's indistinguishable from Mr. Berenguer here, they have standing to bring their DPPA claims under the Spokue analysis. So I'm not going to address that issue but I'm going to focus my time today on two issues. The first is how application of McDonough and Tichich demonstrates suspicious access patterns in this case which leads to a conclusion that his claims have been plausibly pled against defendants cities Bloomington and Shakopee. And secondly, I'm going to address why Appellee's request for this court to address the factual issue regarding how many obtainments are at issue is not proper. So let's jump into the plausibility. This court has outlined what that analysis is in McDonough and Tichich quite thoroughly. Clearly Iqbal Twombly calls for a context-driven case-specific analysis. One of the factors the court should consider in that regard, in the overall picture of this case, is the plaintiff's profile here who is a person not only with local fame but national fame as well as a professional athlete. As I'm sure your honors have seen, there are a number of allegations addressed to his career as a Major League Baseball player and in his role in winning two World Series including serving as the pitcher for the championship. We've also made allegations that distinguish him as somebody who even the state of Minnesota has accepted and recognized as a local celebrity and a person of fame and having him help and promote the state lottery. So Mr. Beringer's fame and reasonably inferred personal interest in him as a venerated professional athlete is even more pronounced in this case than in some of the other DPPA cases that this court has reviewed. In implying the Iqbal Twombly standard in both McDonough and Tichich, this court restated that the complaint should be read as a whole and you will not be determining whether each allegation in isolation is plausible but rather the case as a whole. This Eighth Circuit has addressed the plausibility issue in approximately 17 DPPA cases and in some the analysis boils down to if the plaintiff has no history of crimes or criminal investigations and that there are allegations supporting a reason to believe that plaintiff is of personal interest to the accessors and if there's no obvious lawful alternative explanation for the accesses then the plaintiff has reached the brink of plausibility. This court then identified different additional allegations that would push that claim across the line from conceivable to plausible and although there are different factors the one we're focused on today is this court's analysis of suspicious access patterns. So if we look at McDonough there were really three that were reviewed under the facts in that case and those three were if there were instances where multiple agencies access plaintiff on the same day within the limitations period. Two, whether there were late night or early morning accesses between 11 p.m. and 6 a.m. during the limitations period and one example I would point out that in the Bass case there were two examples that just two examples of late-night accesses with maple grove amounts which was enough and three the court said if you have either of those patterns in the pre statute limitations period plus accesses in the statute limitations period that would be enough to push the claim into I don't believe it does for purposes of how this court evaluated the defendants in the case. It's true that at different points in time the DBS audits that have been prepared and given out by the DPS has provided different information and I think that was part of the difference in McDonough and in the Tichich case all the information that was included in the audits varied but in both cases the court said we're going to look at the defendants independently. It did not say we're going to look at the users independently and the reason why I think that's important your honor because I know that's what the other side is arguing that you need to look at the individual officers. Well aren't they individual defendants? They are not individual defendants. You didn't sue these John Doe's as individual defendants? So as the court may know it when these Minnesota plaintiffs in particular try to get the information of accessors they cannot find out who the individuals are so they start the case not as individual defendants but as John Doe's but as this as this court reviewed in the Heglin case effectively those people can never become individual defendants because by the time you get that information this court has ruled that those claims that John Doe litigation will not relate back to the amendment to the complaint. Therefore those individuals never become defendants for the most part in these cases. So you're appealing only the judgments in favor of the municipalities here? Because there are yes your honor that is correct we do not have at this point the accesses that are issue involve different users but the defendants who are in the case at the time this case was dismissed were the entities. So that's what we have right now in this case which was dismissed at a motion to dismiss phase. So what's the basis for the municipal liability? Under the DPPA? Yeah. The DPPA statute itself identifies who a person is who will be liable under the act as part of that definition it involves individuals it involves organizations including cities and counties it accepts out state agencies. So under the clear and expressed language of the DPPA the defendants here are are liable whether that's directly or vicariously liable. That was my question which theory are you pursuing? Well we would pursue both we believe that they are directly liable under the expressed language of the statute which definitively defines that these defendants are liable under the act. There's no exclusion for them. But how did the municipality knowingly I forget the exact statutory language but the municipality obviously didn't access or obtain the information by its you know as an entity it did it through the employees which would be a vicarious liability theory. Sure and that's the second theory of liability. What's the direct theory what did the municipality do? Well if it is the municipalities who obtain the access to the system it is the municipalities who are identified as the responsible party and as the accessors in the DVS audits that are provided by the state. I don't think there's any question that the state is looking at those entities as the individuals who are accessing and obtaining. I would agree with you your honor they are also they are doing that through some of their agents and that's where vicarious liability comes in. But under the statute it clearly I think Congress clearly intended that the entities themselves would be would have direct liability as well. So how many accesses and attainments are relevant here because of those removed due to the statute of limitations? Sure so that gets I think to the second issue your honor that I wanted to raise. That is a question that the appellees are putting before you and they would like for you to determine how many accesses are at issue. So I would point out as I'm sure you know in the Titich case there was a short passage in the opinion that said while these close in time accesses fall within the technical meaning of obtainment as explained in McDonough in the absence of in the absence of evidence to the contrary we will view them as constituting one continuous gaining of the same information by the same user at the same time. But your honor what I would point out in Titich again what was presented was in the context of a motion dismiss. Clearly there was no evidence on the record before the court. So to the extent that the court said absent in any evidence to the contrary I believe your honors that Titich was clarifying that there was it was not precluding that there might be evidence presented in terms of how you interpret those audits. And appellees know as well as appellants here that the factual records that have been developed below in other cases involving documents and testimony by DPS explain how the information is viewed what information whether the same or different or whether in fact different driver's license records are being accessed. That type of record is not before the court today and therefore I don't believe the court can properly and definitively evaluate how many accesses are at issue. But if you look at the audit which ones are suspicious which ones indicate that there's a there could be a problem. Your honor we believe that all of the remaining accesses that relate to Bloomington and relate to Shakopee are at issue and are supported by suspicious patterns. So quickly with regard to Bloomington there are seven different query entries on the audit. If we just follow strictly McDonough there are three late-night accesses during the pre statute of limitations period as well as accesses in the statute of limitations period which also happened late at night. That alone is McDonough and it should go through on that grounds. In addition however you will also see that user three followed the plaintiff over time and there is a date in 05, 06, 07, 08, 010, 10 and 11 in which user three followed and that was what was in Kendall and that was considered enough. So I think if you just look at those two things those go through with regard to Bloomington. With regard to Shakopee there is one that's within the limitations period but again we've got two pre statute of limitations period late-night accesses plus the one in limitations period again under McDonough it goes through. With regard to both of those we've also presented additional suspicious patterns for the court to consider and one of those which I will just adjust briefly has to do with contemporaneous accessing of the defendant and his children. With regard to Bloomington you see that that happens in four different occasions where 06, 07, 08 and 11 there's contemporaneous accesses with the plaintiff and his adult children which is definitely suspicious and with regard to Shakopee we have that instance happen one one time as well in 08. I see that I'm about out of I'm running out of time so I think with that I will save the rest of my time for rebuttal but I would simply say the appellant has met his plaintiff burden his pleading burden by alleging factual allegations that with reasonable inferences demonstrate a plausible claim against the two entities that are left. Thank you Your Honor. Thank you Ms. Miller-Van Oort. Ms. Engelkar? Engelkar, yes Your Honor. May it please the court counsel my name is Stephanie Engelkar I represent the appellees City of Bloomington and City of Shakopee. The district court correctly applied this court's framework established in McDonough and Titchett in reviewing whether the allegations went past the line into creating DPPA claims that were plausible not just possible. We really are here talking about the third category that this court established in McDonough which looks at the history of frequent suspicious accesses. That word was notably left out from the argument you just heard. That's the key here really in looking at the two cities and their access patterns. What constitutes a sufficient frequency for liability? Well Your Honor in Titchett this court reviewed several claims in a consolidated appeal and I would draw the court's attention to the claims by late-night within limitations accesses on three dates and the same number as late-night accesses by Bloomington as Berenger alleges this court still affirmed dismissal. So at least looking at what the court looked at in the Titchett consolidated appeal it seems that getting in even to four is not time spans, the gaps, how attenuated those time barred accesses are to the within limitations period. So if you have a large time gap that also has bearing on the frequency and whether it's a suspicious pattern. What's the plausible reason why these accesses were proper? Well Your Honor that's really not the city's burden. This is on a rule 12 motion it's the appellant's burden to show in these types of cases that the facial claims from their complaint are plausible to state a claim for relief. It is not the defendant's burden to show that they had a permissible purpose however we're bound by... But if the complaint alleges things that suggest there's no plausible reason why they were permissible doesn't that suggest there's a plausible claim that they were impermissible? No Your Honor it's plaintiff's, it's appellant's legal conclusion it's not enough to cross over that line and this court established a well-reasoned framework to look at what gets a claim over the line. I do want to address some of the claims that you heard first of all with the court's question about who is being sued here. It's correct that currently the city's are the named party but there are John Doe's listed in the complaint. The complaint at appendix 15 at paragraph 97 makes the allegation based on the actions of employees not what the city did. It says quote officers employed by, licensed by or otherwise accessing through the city of Bloomington. This court has seen some of those arguments in Shambor that was recently decided mentioning that or referring to a district court's opinion in that case that found there wasn't liability for the city simply by providing access to its employees. This still boils down to individual conduct and at appendix 1 that has the caption appendix 8 at paragraphs 50 and 51 appellant has named John Doe's 1 through 200 so presumably he intends to use that as a placeholder to pursue claims against these individual users. Well I heard her say today she's only appealing the dismissal of the municipalities but you don't seem to dispute that the municipality could be vicariously liable. Your brief doesn't dispute that you just argue that there's not a sufficient pattern or isn't enough to meet the McDonough-Tichich rationale so. Your Honor that is correct that the vicarious liability issue is not before the court today. We have denied any direct claim against the individuals. I do want to point out that the court ultimately did not address that issue below because it found that the claims themselves just did not reach plausibility. So if this were to be on remand that issue absolutely would proceed and I would love to take that point in oral argument as a waiver of any direct claim against the individuals because that tees up a difficulty for any vicarious liability claim. I do want to point out. No no she didn't say that she just said that they would be barred by the statute of limitations because they can't figure out who are the Doe's. She's not saying that the Doe's didn't violate the rights of the plaintiffs. Well Your Honor that also is not correct that she can't get the names. Minnesota statutes chapter 13 provides the methods for obtaining names. It's not briefed here. That's not really what's at issue but the court needs to be made aware that the methods for getting names are out there. There are separate actions that an individual can pursue. It's no different than trying to get squad video in a controversial case. You bring an action in the district court where that where the holder of the data is regardless of any other pending litigation that there's no record that that happened here and that is briefed was briefed and covered in the Haglund matter. So let's talk about the accesses here at issue. That's really the issue for the court to look at. Shakopee there's just simply nothing to get to plausibility here. The district court was correct in looking at the third category that there were no there were no suspicious categories pushing it into the area of plausibility and accessing his daughter's information on one day in 2008 within two minutes of accessing his plausible and in the brief appellant has argued that this court has to look at the context specific task that requires the court to draw on judicial experience and common sense. There's been much made for looking at the record simultaneously and I would argue that in applying common sense on the other side possible explanations cannot be ignored regarding the joint ownership of vehicles and looking up the multiple registered owners. The court doesn't have to get there though. It's simply based on the framework from McDonough and as the courts applied it in Titich we just don't get there with Shakopee. Now with Bloomington again the patterns here the district court was correct that looking at the different users different times of day don't get us over that hurdle of a history of frequent suspicious accesses. There's a comparison to Alex Kendall's allegations that were also addressed in the Titich consolidated appeal. These are not at all like Alex Kendall's allegations against the city of Minneapolis in that case. In that case this court still looked at a user by user basis and in Titich specifically at 835 F3D at 875 even when the court applied its self-adjusted counting which this court did in Titich finding accesses within several minutes of each other were one access. It found that user 63 accessed her information 69 times that user 78 made 18 adjusted time accesses and that there were 73 late-night accesses. So without a doubt this court had a pretty good reason there with regard to those different accesses to remand that dismissal. Here for Bloomington the two timely accesses involve user 3 and user 7. If we're looking at user 7, user 7 never looked up in the time barred period and frankly user 7 just barely is held in here on four years after the or four years prior to the filing of the complaint. So we're really looking at user 3 here. Again is there a history of frequent suspicious accesses? Here again this is similar to what was alleged by Lorene Barghini in the Titich case. She alleged the same number of late-night accesses by Bloomington as Berenger alleges and the court can compare that at 835 F3D at that case this court determined it was insufficient in number and pattern to meet the McDonough test. Here the time... Why is that? Why did the court make that determination in Titich? There's no explanation is there? I'm just trying to understand what would be the governing rationale for saying that information was insufficient? Yes your honor. Do you have any explanation that you can suggest? Well certainly and frankly in briefing all of the issues in the Titich case, one of the big issues was significant time gaps. So and we kind of have that here. 2006, three different users. Yes they fall into what this court has defined as late-night but are they frequent? If it's 2006, they're different users. This would be five years before the timely access at issue. So overall when the court was looking at the consolidated appeals in Titich that was a factor in looking at how attenuated the historical suspicious patterns would have been and that then gets to the frequency issue. How frequent? About accessing the children. You haven't mentioned that. That's different than access. First of all that accessing the record of a child or adult child for the appellant does not make it more suspicious. In fact it is consistent with the reality of joint ownership of vehicles including adult children owning vehicles. But even if the court did find that that made things more suspicious it still has to be a frequent pattern of suspicious accesses. Is this frequent? And this is where the court again has to look at the allegations against this defendant individually. Not looking at the other agencies that are listed in appellant's brief. There are other agencies that looked at the daughter's record as well. The court can't look at that in assessing Bloomington's liability for that. And even if it were to consider that I believe it was only one access by user three in the history of that user's accesses that is precedent there allowing this court to examine the patterns by individual users. We would ask that if the court determines that the patterns by user three have crossed over that line into the brink of plausibility that this court only remand in a limited capacity as to that access. That one timely access by user three because there's nothing that gets there for user seven and there should be no basis of liability then for Bloomington based on the access by user seven. Finally this court does have the ability to consider Titchitch and its ruling and holding in Titchitch finding that accesses within minutes of each other constitute one attainment. The purpose of that is not to set a precedent then that the trial court is bound by. Rather it's important for the court to recognize that when it's looking at the patterns and the access patterns and counting those patterns. With that I request that the court affirm the district court's order dismissing the complaint. Thank you. Thank you Ms. Angleker. Ms. Miller-Van Oort. Yes your honors I just have three points I'd like to make on rebuttal. First with regard to the question you asked what is sufficient frequency. It's true the court has not defined that specifically but what the court has done was given guidance on when that is met. And as we've articulated with regard to there being late-night accesses in the pre-statute limitations period this court already decided that two was enough in the Bass case. Here we're showing there were three for Bloomington and two for Shakopee. This court has already determined it was sufficiently frequent with regard to somebody following the person over time in the Kendall matter and we show that here too. So even though it's not been defined by way of example we have met the same test that's been applied and we'd ask the court to apply the same reasoning here. My second point I would like to clarify your honors I was not earlier that the does didn't violate that their conduct is not the subject of the suit and they did not violate DBPA. I did not mean to suggest that those individuals are not part of the appeal. The question I was trying to answer was whether or not those individual does have to make a separate plausibility showing to the court. And my answer to that is no because they cannot. And I think this court recognized in its previous decisions when it cited to the recognition under the 12b standard that there are situations in which the plaintiff can't prove definitively elements before discovery because the defendant has the information and that's not going to be used against the plaintiff in a plausibility consideration. So I don't think that can be used here or should be used to the plaintiff's detriment because it's not information they can know. It can point more specifically to an interaction or a relationship. This is the best that they can do because the information's in  I'm confused. You sued these John Does and the district court dismissed the John Does? Correct. And are you appealing the dismissal of the John Does? So our appeal is with regard to that full ruling and to the extent that those individual does are the subject accessors in the case, yes. But the truth is, Your Honor, when the case goes back, realistically they're not going to be able to be substituted given the prior rulings in the case. So the actual individual defendants will likely not be able to be defendants in the case. Well, you said to the extent that you are something, you're appealing the dismissal of the Does, but are you saying, no, the Does claims would be time barred now so we don't have to worry about them, that we should just focus on the municipalities only? Well, I assume that what the court will rule below is that the relation back or the relation back theory won't work. There is a question whether or not that time period still is part of a time period when a case is on appeal and whether that would affect the statute of limitations period. But aside from that issue, yes, it's likely the court would dismiss those as untimely. And the third and last point I'd like to make, Your Honor, is that it's clear from the Titich rationale that the court is able to look at any suspicious patterns that are presented. And here we would ask the court to consider this in view of, again, the person we're dealing with is a national sports figure. But as we presented, Bloomington had that happen two times before and Shakopee one time. So based on that, Your Honor, we'd ask for a reversal with regard to those two city defendants. And we'd also ask that you remand this for further proceedings and that you not make a determination yet on the number of accesses until the evidence can be presented. Thank you. Thank you. Who wishes to thank both counsel for your presence and the argument you provided to the court this morning? We'll take the case under advisement.